# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL NO. 1:11CV198-MR-DSC

| | |
|---|---|
| TIMOTHY NEAL TEAGUE,  )<br>   Plaintiff, )<br>       )<br>vs.     )<br>       )<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security Administration, )<br>   Defendant. )<br>       ) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Judgment on the Pleadings" (document #11) and "Memorandum in Support ..." (document #12), both filed January 12, 2012; and Defendant's "Motion for Summary Judgment" (document #13) and "Memorandum in Support..." (document #14), both filed March 9, 2012.

On March 19, 2012, this case was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Judgment on the Pleadings be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed his application for Supplemental Security Income ("SSI") on August 6, 2008, alleging that he became disabled on December 15, 2007. (Tr. 49, 99, 127, 476). Plaintiff's application was denied initially and on reconsideration. A hearing was held on October 6, 2010. (Tr.

45). At the hearing, Plaintiff amended his alleged onset date to August 6, 2008.

On January 6, 2011, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr. 473-95). The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. The ALJ also found that Plaintiff suffered from status post left L3-4 lumbar discectomy, multilevel degenerative disc disease, seizure disorder, and chronic obstructive pulmonary disorder ("COPD") (Tr. 478), which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Notwithstanding Plaintiff's impairments, the ALJ determined that he had the Residual Functional Capacity ("RFC")[1] to perform:

> medium work,[2] as defined in 20 C.F.R. [§] 416.967(c). I specifically find that the claimant could lift/carry up to a maximum of 50 pounds at one time and lift/carry up to 25 pounds on an occasional basis. Claimant could sit, stand, and walk up to six hours each out of an eight-hour workday. Claimant could push/pull with the upper and lower extremities in a manner consistent with the exertional demands of medium work. Claimant could stoop occasionally and frequently climb, balance, kneel, crouch, and crawl. Claimant should avoid concentrated exposure to fumes and workplace hazards. Claimant is limited to work activity requiring no more than simple one or two-step instructions.

(Tr. 483). The ALJ concluded that Plaintiff had no past relevant work (Tr. 494). The ALJ determined that in light of his RFC, age, education, and work experience, and based on the testimony of the vocational expert ("V.E."), Plaintiff could perform jobs existing in significant

---

[1] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2] "Medium" work is defined in 20 C.F.R. § 404.1567(c) as follows:
> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work

numbers in the national economy (Tr. 494-95). Therefore, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 495).

By notice dated June 6, 2011, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on August 9, 2011. Plaintiff argues that the ALJ erred in assessing his credibility and in weighing the medical opinion evidence. See Plaintiff's "Memorandum ..." at 19-29 (document #12). Plaintiff argues that as a result of those errors, the ALJ's formulation of his RFC, his reliance on the V.E.'s testimony, and his finding of "not disabled" are not supported by substantial evidence. The parties' cross dispositive Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

3

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION OF CLAIM

The question before the ALJ was whether the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[3] Although Plaintiff challenges the ALJ's RFC determination generally, his main argument centers on the evaluation of the opinion of Dr. Rebecca S. Daniell, a treating physician. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). A treating source's opinion that rests upon a claimant's less-than-candid subjective complaints is entitled to minimal probative value. See Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005). Indeed, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion." Christian v. Apfel, No. 98-1673, 168 F.3d 481, 1998 WL 911720, at *2 (4th Cir. Dec. 31, 1998) (per curiam, unpublished) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1076-77 (7th Cir. 1992)) (internal citation omitted).

On October 6, 2010, Dr. Daniell completed a Physical Residual Functional Capacity questionnaire. (Tr. 444-49). Dr. Daniell had treated Plaintiff since November 2009. (Tr. 445). She opined that Plaintiff's pain and other symptoms were often severe enough to interfere with attention and concentration. (Tr. 446). According to the questionnaire Dr. Daniell stated that Plaintiff could walk one-half a city block without rest, sit for fifteen minutes at a time, and stand for ten minutes at a time. (Tr. 446). In an eight hour workday with normal breaks, Plaintiff could sit for a total of less than two hours and stand or walk for a total of less than two hours. Plaintiff would need to walk around for eight minutes after every ten minutes. (Tr. 447). Plaintiff required a job permitting shifting at will from sitting, standing or walking and would need to take unscheduled breaks for

5

about twenty minutes. Id. Plaintiff needed a cane or other assistive device to stand or walk. Id. Plaintiff could occasionally lift and carry less than ten pounds but never lift more than ten pounds. (Tr. 448). Plaintiff had significant limitations in doing repetitive reaching, handling or fingering. Id. Plaintiff would miss work more than three times a month due to his impairments or treatment. Id. Dr. Daniell noted that Plaintiff was "at definite risk of aggravating his conditions." Id. She stated that Plaintiff's symptoms and limitations were present since at least December 15, 2007. (Tr. 449).

The ALJ gave little weight to Dr. Daniell's opinion because he found it to be unsupported by objective findings and inconsistent with the other substantial evidence of record (Tr. 492-93). The ALJ properly noted the lack of supportive objective findings in Dr. Daniell's opinion or treatment notes. (Tr. 445-49, 452-72, 492). In support of her opinion, Dr. Daniell cited the "numerous neurosurgical [and] orthopedic evaluations" conducted by other medical sources, which she had "not repeated." (Tr. 445). Reliance on those other sources places her in a similar position as the state agency medical consultants, who also based their opinions on the clinical findings and diagnostic testing of other examining sources. Those state physicians concluded that Plaintiff could perform significantly more physical activity than Dr. Daniell's assessment allowed. (Tr. 287-94, 317-24, 493).

The ALJ reasonably determined that the findings of the other medical sources did not support the significant limitations found by Dr. Daniell. (Tr. 492). Specifically, the ALJ cited Plaintiff's normal neurologic and musculoskeletal examinations from August 2008 (the same month as his alleged onset date of disability). (Tr. 236, 486). He cited the September 2008 examination with Dr. Jonathan Sherman, a neurologist, that showed Plaintiff with normal range of motion in his neck and back, full strength throughout, normal gait, and normal sensory examination. (Tr. 244-45, 486). As the ALJ noted, Dr. Sherman ruled out surgery citing a lumbar MRI showing no significant nerve

root compression at any level as well as the fact that Plaintiff did not have "any true radicular symptoms." (Tr. 245, 486). The ALJ also referenced treatment records from August 2009 showing that Plaintiff had experienced a temporary exacerbation of his seizure disorder, which was likely caused by changes in his medication. (Tr. 373-74, 488-90). Plaintiff was examined by Dr. Rob Armstrong, who prescribed a cane for impaired balance (Tr. 374, 489). However, the seizure activity was predominately nocturnal and had resolved by March 2010 with adjustment of medication. (Tr. 430, 437, 489). In April 2010, Dr. Armstrong's office provided a letter to the Department of Motor Vehicles stating that Plaintiff was able to drive. (Tr. 436-37).

None of the treating specialists relied upon by Dr. Daniell opined that Plaintiff was disabled (Tr. 492). See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say."); Bostic v. Astrue, No. 3:10CV630-GCM-DSC, 2011 WL 3667219, at *5 (W.D.N.C. July 22, 2011) (same). Plaintiff argues that the ALJ failed to adequately develop the record by not soliciting opinion evidence from Drs. Sherman and Armstrong. "Contrary to Plaintiff's assertions, the social security regulations do not require that the ALJ acquire a treating physician's RFC assessment. Instead the regulations just require that the ALJ develop a 'complete medical history' and obtain 'all medical evidence' from the treating physician." Parker v. Astrue, 792 F. Supp. 2d 886, 895 (E.D.N.C. 2011). Moreover, the ALJ's duty to develop the record does not excuse the claimant from the burden of producing evidence to establish disability. See Bowen v. Yuckert, 482 U.S. 137, 146, n. 5 (1987) (explaining that "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so"); 20 C.F.R. § 416.912(c) ("[Y]ou must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)."). At the hearing, Plaintiff's attorney did not indicate that there were any

7

outstanding medical records. Counsel did not request the ALJ's assistance in obtaining additional records, or request that the record be held open for submission of any additional evidence (Tr. 49).

Given the absence of objective findings, the ALJ reasonably concluded that Dr. Daniell's opinion was based primarily on Plaintiff's subjective complaints, which he properly discredited. (Tr. 492). As the ALJ explained, Plaintiff had provided misinformation to Dr. Daniell on numerous occasions. (Tr. 492). In one instance, Plaintiff told Dr. Daniell that he had a "falling out with Dr. Standridge," when, in fact, Dr. Standridge dismissed him from his practice because of a positive drug test for marijuana and PCP. (Tr. 61, 270, 325-26, 469, 492). Plaintiff also informed Dr. Daniell that Dr. Sherman had diagnosed him with fibromyalgia and had opined that nothing could be done for his back because "it's shot." (Tr. 469, 492). Dr. Sherman did not diagnose Plaintiff with fibromyalgia. He concluded that surgery was not applicable because Plaintiff had no abnormality of the spine that required surgical correction. Dr. Sherman also found that a spinal MRI revealed only mild foraminal and canal stenosis and no significant nerve root compression (Tr. 245, 492). Plaintiff's report to Dr. Daniell that he had suffered a "mini stroke" is contradicted by an MRI of his brain showing no evidence of cerebrovascular accident (Tr. 330, 469-70, 492). From these misrepresentations, the ALJ reasonably inferred that Dr. Daniell's opinion was based at least in part on misinformation provided by Plaintiff.

The ALJ also reasonably found Dr. Daniell's opinion to be inconsistent with Plaintiff's activities of daily living. His activities included using a weed-eater in August 2009, moving a couch in December 2009 (Tr. 411, 467), and working at various points in time in July 2008, February 2009, and August 2009 as a floor installer. (Tr. 259, 376, 379, 492).

Plaintiff also argues that the ALJ gave greater weight to the state agency physicians'

8

opinions even though they did not review a substantial portion of the medical evidence. The ALJ reviewed all of the evidence and concluded that the state agency physicians' opinions were consistent with the entire medical record. Thus there was no error in the ALJ's evaluation of their assessments. (Tr. 19-20); McCuller v. Barnhart, No. 02-30771, 2003 WL 21954208, at **4 n.5 (5th Cir. August 15, 2003) (holding that the ALJ did not err in relying upon the state agency physician's opinion even where the doctor did not have the benefit of all the treatment notes, as the ALJ considered those notes). Consistent with the regulations, the ALJ formulated his RFC finding based on a through consideration of the entire record, including physicians' opinions, other objective medical evidence, Plaintiff's subjective complaints, and activities of daily living (Tr. 493, see generally Tr. 483-94). See 20 C.F.R. § 416.945.

Plaintiff next argues that the ALJ's assessment of his credibility is not supported by substantial evidence. The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily

9

activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's status post left L3-4 lumbar discectomy, multilevel degenerative disc disease, seizure disorder, and COPD – which <u>could</u> be expected to produce some of the pain claimed by Plaintiff. Accordingly, the ALJ found Plaintiff to have met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not consistent with the objective evidence in the record.

The ALJ provided several reasons for discounting Plaintiff's subjective allegations. In evaluating Plaintiff's credibility, the ALJ cited the objective medical evidence, his limited course of treatment, noncompliance with certain treatment modalities (including numerous recommendations that he stop smoking), activities of daily living, periodic work activity, and inconsistencies between his testimony and reports to his physicians (Tr. 483-94). <u>See</u> SSR 96-7p, 1996 WL 374186.

Plaintiff misconstrues the ALJ's statement that his allegations were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 484). The ALJ did not believe Plaintiff's allegations that his impairments limited him beyond the restrictions contained in the RFC. Plaintiff also argues that ALJ erred by considering his reports of working at various times in 2008 and 2009 as a factor in assessing his credibility. The ALJ's finding is substantiated by medical records, which show that Plaintiff reported working at various points in July 2008, February 2009, and August 2009 (Tr. 259, 376, 379, 491). SSR 96-7p specifically lists "prior work record and efforts to work" as a factor that may be considered in evaluating credibility. <u>See</u> 1996 WL 374186, at *5.

10

Finally, Plaintiff argues that as a result of the alleged errors discussed above, the ALJ's formulation of his RFC, his reliance on the V.E.'s testimony, and finding of "not disabled" are not supported by substantial evidence. Having concluded that the ALJ's treatment of Plaintiff's subjective complaints and the medical opinions is supported by substantial evidence, this argument fails.

Although the medical records establish that the Plaintiff experienced symptoms and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts found by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from a combination of impairments, but was not disabled.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records, Plaintiff's RFC and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Judgment on the Pleadings" (document #11) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #13) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Martin Reidinger.

**SO RECOMMENDED AND ORDERED**.

Signed: April 26, 2012

David S. Cayer
United States Magistrate Judge